**Melvyn KRAUSS, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of First City National Bank and Trust Company, formerly known as First City Federal Savings Bank, Defendant,**

**and**

**Joint Venture Asset Acquisition, Intervenor Complainant.**

No. 87 Civ. 5585 (RWS).

United States District Court, S.D. New York.

July 15, 1991.

---

Gary J. Langer, New York City, for plaintiff.

Bizar Shustak Martin & Schneider, New York City (Gayle S. Sanders, of counsel), for defendant.

Lawrence S. Berkowitz, New York City, for Intervenor Complainant.

## OPINION

SWEET, District Judge.

Defendant Federal Deposit Insurance Corporation ("FDIC") and intervenor Joint Venture Asset Acquisition ("JVAA") have each moved for summary judgment dismissing the claims of plaintiff Melvyn Krauss ("Krauss") and upholding their claims against Krauss. JVAA has also moved in the alternative for permission to amend its claims against Krauss and to assert a cross-claim for indemnity against FDIC. For the reasons set forth below, both summary judgment motions are granted.

*The Parties*

Krauss, a New York resident who holds a Ph.D. in economics, is a Senior Economics Fellow at New York University and Stanford University. In March 1987, Krauss borrowed $63,000 from First City National Bank and Trust Company ("FCNB") in exchange for a promissory note ("the Note"). The loan has never been repaid.

FDIC is a United States Government corporation which is the receiver of FCNB. JVAA is a New York joint venture which acquired Krauss's Note from FCNB prior to the FDIC's takeover of the bank.

*Prior Proceedings*

Krauss initial filed a complaint against FCNB, asserting federal securities violations and common law fraud claims in connection with the loan and his concurrent investment of the proceeds, on August 4, 1987, and the case was assigned to the Honorable Shirley Wohl Kram. FCNB answered and asserted a counterclaim for recovery under the Note. In December, 1987, Krauss sought to amend his complaint to request a trial by jury. This motion was summarily denied by Judge Kram because Krauss had not followed the proper pre-motion procedure.

In July 1988, FCNB moved for summary judgment on its counterclaim. By memorandum opinion of October 18, 1989, the motion was denied, Judge Kram having concluded that while FCNB had made out a *prima facie* case for recovery on the Note there was a genuine factual dispute regarding the relationship between FCNB and Ronald Williams ("Williams"), the sponsor of the program in which Krauss had invested the loan proceeds.

> While it is indisputable that Krauss signed a promissory note and that [FCNB] has established a *prima facie* case, summary judgment is inappropriate because Krauss has alleged a sufficiently close relationship between [FCNB] and [Williams] for a jury reasonably to infer that Krauss was knowingly defrauded by [FCNB.]

*Krauss v. First City National Bank and Trust Co.*, 87 Civ. 5585 (SWK) slip op. at 11, 1989 WL 125783 (S.D.N.Y. Oct. 18, 1989) ("the 1989 Opinion").

In December 1989, FCNB endorsed the Note and transferred it to JVAA. Shortly thereafter, FDIC became the receiver of FCNB and was substituted as the defendant in this action. JVAA moved to intervene in the case, and Judge Kram granted the motion in August 1990. JVAA then filed a complaint for recovery on the Note against Krauss, and Krauss answered and asserted as counterclaims substantially the claims which he had made originally against FCNB.

On October 29, 1990, the case was transferred to the Honorable John S. Martin, and when he recused himself it was transferred to this Court. The present motions were filed in February 1991, and were argued and fully submitted on March 8.

*The Facts*

The facts relating to FCNB's loan to Krauss and the making of the Note are set forth in detail in the 1989 Opinion, familiarity with which is assumed. To summarize, Krauss became interested in investing in oil drilling in late 1986, and after receiving advise from his accountant and reviewing various promotional materials he decided to invest in an oil drilling partnership promoted by Williams and identified as the Forum Consolidated Drilling—Taylor Program ("Forum"). The investment was made by means of a loan from FCNB with the proceeds of the loan to be paid to Forum. On March 20, 1987 Krauss executed the Note in exchange for the $63,000 loan. In con-

nection with loan, Krauss also signed a Borrower's Letter ("the Letter"), a two-page document which directed that the proceeds of the loan were to be paid directly to Forum and which contained the following paragraph immediately above the signature line:

*Investment Knowledge*

I acknowledge and fully understand that the Bank is acting solely as a lender and not as an investment advisor. The Bank has made no attempt to analyze or evaluate my intended investment in the Program. The Bank has made no representations to me, express or implied, to induce me to request this loan. The bank has given no opinion or advice as to whether it is wise or prudent for me to invest funds in the Program. The Bank has made no representations concerning the Program, its General Partner(s) or their financial strength, prospects, or integrity. I have made my investment decision based on such independent investigation as I have deemed necessary. I understand that the Bank has not participated in the preparation of an Offering memorandum or similar document for the Program and therefore is not responsible for any statement contained in or the completeness of any such document. I assume all responsibility for keeping myself informed of the financial condition and operation of the Program and agree that the Bank shall have no duty to advise me of any such information. I agree to hold the Bank harmless and do hereby release the Bank from any and all claims that I may have relating to or arising out of my investment.

It appears that Forum was unsuccessful in its pursuit of oil and that Krauss has neither recouped his investment nor received the tax benefits which he was allegedly promised by Williams. According to Krauss, even prior to his involvement it was clear to all concerned, including both Williams and FCNB, that there was no hope for success, and in fact Williams sought investment in order to help pay off earlier loans from FCNB on other investment schemes which had also gone sour.

Furthermore, Krauss asserts that there was an undisclosed and improper relationship between FCNB and National Capital Corporation ("NCC"), the broker which handled his loan application and obtained the financing from FCNB, and that an inordinate portion of the loan proceeds were diverted to NCC as a finder's fee.

More specifically, Krauss alleges that FCNB had a long history of financing investments in Williams' various investment tax shelters and was well aware of the shaky financial condition of Williams' corporation, which sponsored and promoted these programs and served as managing General Partner. Krauss claims that the bank had a significant number of outstanding loans to Williams in connection with these investment schemes, and it knew that the only way Williams would be able to repay the loans was to find new investors and obtain fresh financing on his newer programs such as Forum. Therefore, Krauss asserts, FCNB was motivated to induce investors to place their money in programs such as Forum, which the bank knew were bound to fail, in order to have the old loans paid off and to acquire fresh collateral, namely the property of the new investors, to replace the worthless collateral which secured the old loans, namely interest in Williams' failing or already defunct programs.

*Discussion*

*1. The Standard for Summary Judgment.*

On a motion for summary judgment, the relevant inquiry is whether, on the record as it presently stands, there exists a "genuine issue as to any material fact," or whether the movant "is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. In deciding such a motion, the court should not resolve disputed issues of fact, but should merely determine whether there are any factual issues which require a trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However,

[b]y its very terms, this standard provides that the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). In a case such as this, where there is clearly a dispute over certain of the facts, the first step is to decide whether any of the disputed facts are material. *See, e.g., Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 135 (S.D.N.Y.1989) (summary judgment granted; although non-moving party had placed many facts in dispute, none of disputed facts was material).

### 2. JVAA's Motion is Not Barred by the 1989 Opinion.

■ As a threshold matter, Krauss asserts that JVAA's motion is barred by the 1989 Opinion denying FCNB's similar motion, under the "law of the case" doctrine. However, as the Supreme Court has held, the doctrine of the law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.). While the simple fact that the case has been assigned to a different judge should not be viewed as automatic grounds for a litigant to reargue matters resolved earlier, intervening developments in the case itself or in the controlling law may make it appropriate to reconsider issues raised and addressed earlier.

In the 1989 Opinion Judge Kram held that a factual dispute precluded summary judgment in FCNB's favor. By now nearly three years have passed since that motion was filed and eighteen months have elapsed since it was denied. In that time, discovery might well have shed additional light on the factual issue, and a number of cases have been decided which may shed light on the law governing the claims at stake here. In this situation, it is inappropriate to reject JVAA's motion solely on the basis of the 1989 Opinion.

### 3. FDIC is Entitled to Summary Judgment.

■ FDIC asserts that under the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), particularly as extended in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), and 12 U.S.C. § 1823(e) Krauss's claims of fraudulent inducement, both affirmative and as a defense to the Note, must be dismissed as against FDIC, and accordingly FDIC is entitled to judgment as a matter of law.

In *D'Oench*, the Supreme Court held that a borrower from a failed bank may not defend in a collection action by the FDIC by asserting that an unrecorded agreement with the bank precludes enforcement of the loan. 315 U.S. at 459–60. This rule was subsequently codified in 12 U.S.C. § 1823(e):

(e) Agreements against interests of Corporation [FDIC]

No agreement which tends to diminish or defeat the interests of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depositary institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depositary institution,

(3) was approved by the board of directors of the depositary institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depositary institution.

This provision was, in turn, interpreted by the Supreme Court in *Langley* to prevent a borrower from escaping liability to FDIC upon a claim of fraudulent inducement by the lending bank.

Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or the truthfulness of a warranted fact.

484 U.S. at 93, 108 S.Ct. at 402. Here, Krauss' claims against FDIC are all premised on alleged misrepresentations made to Krauss at the time of the loan; relating to the soundness of Williams' investment program and the relationships between FCNB and Williams and between FCNB and NCC.[1]

▮ Krauss' opposition to FDIC's motion consists of his allegation that FDIC was aware of his claims against FCNB at the time it took over the bank, and that the Note had been transferred to JVAA prior to that time. However, in *D'Oench* itself the Supreme Court stated that the FDIC's knowledge of an unwritten agreement was irrelevant. 315 U.S. at 459, 62 S.Ct. at 680; *accord FDIC v. McCullough*, 911 F.2d 593, 600 n. 5 (11th Cir.1990); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir.1990); *FDIC v. Kratz*, 898 F.2d 669, 671 (8th Cir.1990); *FDIC v. Investors Associates X., Ltd.*, 775 F.2d 152 (6th Cir.1985); *Alarcon v. FDIC*, 772 F.Supp. 334 (E.D.Mich.1991); *Adams v. Madison Realty & Development, Inc.*, 746 F.Supp. 419 (D.N.J.1990).

As for the transfer of the Note to JVAA, the agreement between JVAA and FDIC makes FDIC liable for all claims arising out of the Note based on FCNB's activity prior to April 7, 1988, so that Krauss' fraud claims, if upheld, would implicate FDIC just as *D'Oench* sought to prevent.[2] Therefore, under the doctrine of *D'Oench, Langley* and § 1823(e), summary judgment in the FDIC's favor is warranted.

### 4. JVAA is Entitled to Summary Judgment on the Note.

▮ In their papers on JVAA's motion, both JVAA and Krauss have submitted numerous affidavits and deposition testimony of Williams and other individuals involved in the operations of FCNB and Williams' investment programs. All of the evidence merely serves to reinforce Judge Kram's earlier finding that there is clearly a genuine factual dispute concerning the relationship between FCNB and Williams and the bank's knowledge of the financial condition of Williams' investment programs.

However, while this factual dispute is certainly material to the question of whether or not FCNB aided and abetted Williams' fraudulent investment scheme, and whether or not FCNB may be liable for fraudulently inducing Krauss to invest in Forum, it is simply not relevant, under applicable New York law, to the issue of whether the Note itself was the product of fraudulent inducement. As this Court recently stated in connection with a different tax shelter investment also financed by loans from FCNB, "in order for fraudulent inducement to prevent enforcement of a promissory note, it generally must be based on misrepresentations concerning the terms or conditions of the loan itself." *Thornock v. Kinderhill*, 749 F.Supp. 513,

---

1. As discussed below in connection with JVAA's motion, these allegations do not evince fraudulent inducement of the loan, as opposed to fraudulent inducement of the investment, thus even if *D'Oench* were not applicable FDIC would be entitled to summary judgment on the same grounds as JVAA.

2. The only other argument made by Krauss is that if JVAA were permitted to amend its com-

plaint to assert a cross claim for indemnity then FDIC would *still* be a part of the case, and "[t]here would seem, therefore to be no good reason to decide FDIC's liability to [Krauss] on [his] claim against the Bank at this time." Clearly, this "argument" in no way establishes a material factual dispute or suggests any legal basis for denying FDIC's motion.

518 (S.D.N.Y.1990); (citing *Hunt v. Bankers Trust Co.*, 689 F.Supp. 666, 673–74 (N.D.Tex.1987) (applying New York law) and *Millerton Agway Coop., Inc. v. Briarcliff Farms, Inc.*, 17 N.Y.2d 57, 268 N.Y.S.2d 18, 215 N.E.2d 341 (1966)). As was the case in *Thornock*, Krauss has made no claim and adduced no evidence to indicate that he was misled about any of the terms or conditions of the loan itself. In fact, JVAA has presented evidence that all of the terms were specifically reviewed with Krauss prior to disbursement of any funds and that Krauss indicated that he fully understood the transaction.

Together with Judge Kram's earlier finding that a *prima facie* case. for collection of the Note had been established, Krauss' failure to establish a factual dispute regarding fraudulent inducement of the Note itself renders summary judgment appropriate on JVAA's claim for payment of the Note and on Krauss' counterclaims to the extent that they seek cancellation of the Note.

### 5. Krauss has Not Established a Genuine Issue Concerning JVAA's Liability for FCNB's Alleged Fraud.

█ Insofar as Krauss' counterclaims against JVAA seek cancellation of the Note, the discussion in the preceding section and the reasons underlying the summary judgment in JVAA's favor on the Note also support summary judgment dismissing the counterclaims. In addition, to the extent that the counterclaims seek affirmative relief from JVAA for alleged securities violations, Krauss has not adduced evidence to support a finding of liability against JVAA. As FCNB's assignee on the Note, JVAA is naturally subject to any defenses which Krauss might have to payment on the Note, but is not generally liable for all of the bank's past torts. In order to recover from JVAA for fraud, Krauss must establish that JVAA was it-

self involved in the alleged misrepresentations. Admittedly, Krauss has presented evidence which could create an issue regarding FCNB's participation in Williams' investment scheme, but there is nothing which ties JVAA, an entity which did not even exist at the time of Krauss' investment, into the alleged fraud. Therefore, summary judgment on the securities law counterclaims against JVAA must be granted.[3]

### Conclusion

For all of the foregoing reasons, summary judgment is granted in favor of FDIC and JVAA on all of Krauss' claims and counterclaims and on their claims seeking payment on the Note.

It is so ordered.

█

---

**3.** The disposition of these motions makes it unnecessary to reach JVAA's motion to amend its pleadings to assert a defense based on the Borrower's Letter. However, it seems worth noting the numerous recent cases in which letters with language nearly identical to the Borrower's Letter here have been held to be valid defenses to claims against the lender. *See Thornock, supra,*

749 F.Supp. at 519; *FCNB v. Heaton*, 165 A.D.2d 710, 563 N.Y.S.2d 783 (1st Dep't 1990); *FCNB v. Tobias*, 156 A.D.2d 267, 548 N.Y.S.2d 655 (1st Dep't 1989); *FCNB v. Reitberg*, No. 4572/88, slip op. at 4 (N.Y.Sup.Ct. Dec. 12, 1988); *FCNB v. Reitberg*, No. 4590/88, slip op. at 4 (N.Y.Sup.Ct. Dec. 9, 1988).